Filed 2/18/21  P. v. Gonzalez CA4/2
(unmodified opinion attached)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | E074515 |
| Plaintiff and Respondent, | (Super.Ct.No. SWF1800385) |
| v. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| MANUEL ARTURO GONZALEZ, | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

We deny Gonzalez's petition for rehearing and modify the opinion filed in this matter on February 3, 2021, by deleting the disposition language and replacing it with the following:

We reverse the judgment and remand to the trial court, where the trial court shall vacate Gonzalez's plea if he moves to withdraw his plea within 30 days of the remittitur.

Except for the modification, which doesn't affect the judgment, the opinion is unchanged.

1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
J.

We concur:

MILLER _____
Acting P. J.

FIELDS _____
J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074515 |
| v. | (Super.Ct.No. SWF1800385) |
| MANUEL ARTURO GONZALEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. F. Paul Dickerson III, Judge. Reversed with directions.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

On the eve of trial, appellant Manuel Arturo Gonzalez faced several charges related to drug and gun possession and resisting arrest. He also had a plea offer under which he would admit to negligent discharge of a firearm, resisting a peace officer, and possession of methamphetamine in return for dismissal of other serious charges and recommendations that Gonzalez enter a residential substance abuse treatment program or serve a maximum term of two years in prison. Gonzalez balked and instead asked the trial judge to allow him to replace his retained attorney with a new attorney. The trial judge sent the matter out to another judge for what he characterized as a *Marsden* hearing, which is the procedure when a criminal defendant seeks to replace *appointed* counsel, not retained counsel.[1]

At the hearing, the new judge also treated the hearing as a *Marsden* hearing. He found the conflict between Gonzalez and his retained attorney not serious and based primarily on Gonzalez's misunderstanding of his legal situation. The new judge counseled Gonzalez to face the facts as he understood them and to seriously consider taking the plea, which the judge characterized as excellent because he would face a substantially longer state prison sentence if found guilty only on the charges of possessing a firearm while under the influence and discharging a firearm. In the end, the judge "den[ied] the *Marsden* motion, because what's clear to this Court is the lines of

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

2

communication between both of you are open."[2] Gonzalez then took the plea and, after being turned down for the residential treatment program, received a two-year sentence from the new judge.

On appeal, Gonzalez argues the judge abused his discretion by denying his motion to discharge retained counsel based on the legal standard in *Marsden*. The correct standard for retained counsel is found in *People v. Ortiz* (1990) 51 Cal.3d 975 and requires no finding of conflict between a defendant and his counsel. Because error in denying the right to counsel of choice is structural, Gonzalez asks us to reverse the conviction and remand to the trial court so he may withdraw his plea. Though we agree with the trial judge's assessment of the plea offer, we agree we must reverse and remand.

# I

## FACTS

The Riverside County District Attorney filed a felony complaint against Gonzalez on June 5, 2018. Initially, a public defender represented Gonzalez. However, he later retained a private attorney, who first appeared at an April 17, 2019 hearing. The trial court allowed the substitution of new counsel but noted both parties had a right to a speedy trial and commented that the case was already "very old," and he was granting the motion "with the anticipation that the case must move forward."

---

[2] The hearing transcript is entitled "Reporter's Sealed Transcript on Appeal Marsden Hearing."

Two months later, the prosecution filed an information charging appellant with six separate offenses: discharging a firearm in a grossly negligent manner (Pen. Code, § 246.3), resisting an executive officer (Pen. Code, § 69), personally possessing a firearm while under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (e)), possessing methamphetamine while armed with a loaded, operable firearm (Health & Saf. Code, § 11370.1), possessing an opium pipe or device used to inject or smoke a controlled substance (Health & Saf. Code, § 11364), and resisting a peace officer (Pen. Code, § 148, subd. (a)(1)). They alleged Gonzalez personally used a firearm in committing the first count. (Pen. Code, § 1192.7, subd. (c)(8).) Later, the prosecution amended the information to add a count for possession of a controlled substance. (Health & Saf. Code, § 11377.)

On December 9, 2019, the case was set for trial after having been trailed from an earlier date. The parties had announced they were ready the previous week. When the case was called, defense counsel, Bryce Armendariz, asked for an in-camera hearing and then informed Judge Monterosso that Gonzalez wanted to make a motion for substitution of new counsel. Judge Monterosso told Gonzalez he was "always free to hire another lawyer," and he would grant the motion if the new attorney was present and "ready to go today."

However, Gonzalez didn't yet have a new attorney. He said, "this is something . . . recent, and so I was hoping that maybe I could get some time to find new counsel." When the judge expressed concern because the case had already been pending for 18 months,

4

the matter was set for trial, and the parties had said they were ready to proceed just the week before, Gonzalez explained, "[a]fter we announced ready, there was a change in circumstances of Mr. Armendariz and I aren't able to see—agree on a—we had discussed a plan for my defense." The judge interrupted Gonzalez so he wouldn't reveal a privileged conversation with his attorney.

Judge Monterosso asked the prosecutor for her position, and she responded, "if we do that, I run into vacation time around the holidays." The judge didn't think that would be an obstacle because he believed new counsel would need two to three months to prepare for trial. The judge then remarked "this is sort of a *Marsden* motion," and said, "[b]ecause we have private counsel and I think the Court's going to need to examine exactly what the conflict is and whether there's good cause, [it] seems to me, Mr. Armendariz, maybe this needs to be done in camera?" Defense counsel agreed, and the trial judge said, "I'll send you to Judge Dickerson, Department S103, forthwith, to have an in-camera hearing regarding your client's request to continue the matter to hire new counsel because of the conflict with his lawyer."

Judge Dickerson presided over the hearing, which he too referred to as a "Marsden hearing." When the court asked Gonzalez about his reason for "want[ing] to fire [his] lawyer," he said his counsel disagreed with his desire to file a motion to compel discovery of exculpatory evidence, which he believed the prosecution was withholding. He said there was evidence showing the officers were wearing body-worn cameras at his

arrest, which contradicted the prosecution's representation. He also said he believed the police had used excessive and unnecessary force in his arrest.

Mr. Armendariz informed Judge Dickerson that the conflict stemmed from Gonzalez's belief that he had been harassed by the authorities for a period of years, culminating in his arrest. As a result, he said, they disagreed over the defense. Gonzalez wanted him to file a motion to compel video footage of the arrest from body cameras and the two disagreed whether Gonzalez should take the stand and testify about the harassment he alleged. Counsel noted Gonzalez believed there was a statute requiring officers to wear body cameras and reported he had explained to Gonzalez there was no such law. Counsel also said he had already asked the prosecution for any available videos, and they had represented there were none. Finally, counsel informed the court that Gonzalez was refusing to pay his fees for proceeding to trial.

Judge Dickerson explained to Gonzalez that the prosecution was already under an obligation to turn over all exculpatory evidence, his attorney could not file a motion that he believes is unsupported, and, though a defendant has input on his defense, counsel has the final say in filing motions. The judge emphasized counsel had already asked for any exculpatory video evidence in the prosecution's possession, and the prosecution indicated there were no videos. Without contrary evidence, Gonzalez's belief that the prosecution was withholding exculpatory video footage would be speculation, making a motion futile. The judge also explained the prosecution was unlikely to be hiding video footage, since any resulting conviction would be overturned if they withheld exculpatory evidence. As

6

for his belief the officers used excessive force by using a police dog to subdue him and had engaged in a pattern of harassment before the arrest, the court explained Gonzalez could present evidence of such conduct at trial—including his own testimony. The judge did note, however, that the trial judge might exclude the evidence as not relevant to the charges he faced.

Judge Dickerson then asked about the plea offered by the prosecution and expressed his opinion that his attorney had negotiated a good deal, even if Gonzalez were not guilty of some of the charges. Judge Dickerson admonished Gonzalez not to tell him about the facts of the case but advised him to evaluate his advice against the facts as he understood them. "[I]f you have no defense to discharging a firearm and being under the influence, you'd be looking at prison just for those, even if the jury found you not guilty on the [charge of section] 69 resisting [arrest] by force." The judge said, "So you need to think about this very carefully. Don't just focus on the police dog. Don't just focus on harassment. The issue is whether you have got a drug problem and whether you had access to a firearm and whether you fired that firearm. If you did—and only you know it—I am not going to ask you, but you have been charged with it. If you know you can't get out from under that, you need to think about the offer that your attorney got you. That's an incredible offer."

Near the end of proceedings, Judge Dickerson asked Gonzalez, "If we brought down the D.A., do you want to settle in this court, rather than upstairs and get this handled?" Gonzalez responded, "that's doable." Judge Dickerson then said, "Let me do

7

this. Let me have the D.A. come down, right. Let's see if we can get this handled." He then denied Gonzalez's motion to replace his counsel, saying, "I'm denying the *Marsden* motion, because what's clear to this Court is the lines of communication between both of you are open, but it's difficult. This is a difficult environment. So that is done."

After conferring with his attorney and speaking with the prosecutor, Gonzalez pled guilty to the counts for negligently discharging a firearm, resisting a peace officer, and possessing methamphetamine. In exchange, the prosecution dismissed the remaining charges and agreed to a term of probation with 365 days of custody and screening for the residential substance abuse treatment program, with a maximum possible sentence of three years in prison. The plea also indicated if Gonzalez was found ineligible for the residential treatment program, the case would be brought back for sentencing reconsideration. Gonzalez agreed to a *Cruz* waiver, permitting his release from custody in exchange for his promise to return for sentencing.[3]

On December 13, 2019, Gonzalez failed to appear for sentencing. Defense counsel said he was at home but refused to leave his room. According to counsel, Gonzalez "had doubts and he maybe wanted to withdraw his plea and about our defense." Judge Dickerson issued a warrant for his arrest. At the request of Mr. Armendariz, the judge relieved him as counsel. The court later appointed a public defender to represent Gonzalez.

---

[3] *People v. Cruz* (1988) 44 Cal.3d 1247.

On January 9, 2020, Gonzalez was found ineligible for the residential treatment program, and Judge Dickerson sentenced him to a two-year term for negligently discharging a firearm and a concurrent 60-day term for each of the other two counts. On the prosecution's motion, Judge Dickerson dismissed the remaining counts and allegations.

Gonzalez filed a notice of appeal the same day. On March 6, 2020, he filed an amended notice of appeal and requested a certificate of probable cause, which was granted.

## II

## ANALYSIS

Gonzalez argues the trial court erroneously handled his request to discharge his retained counsel by treating it as a *Marsden* motion. He argues, correctly, that the *Marsden* standard was not required because his attorney was retained rather than appointed. He argues he had the right to discharge his appointed counsel even if there was no irreconcilable conflict, and the court's failure to consider the request under the appropriate standard requires reversal of his conviction. He seeks remand to give him the opportunity to withdraw his guilty plea.

A. *Legal Background Governing Requests to Substitute Counsel*

"'The right to retained counsel of choice is—subject to certain limitations— guaranteed under the Sixth Amendment to the federal Constitution. [Citations.] In California, this right "reflects not only a defendant's choice of a particular attorney, but

9

also his decision to discharge an attorney whom he hired but no longer wishes to retain." [Citations.] When a defendant makes a 'timely motion to discharge his retained attorney and obtain appointed counsel,' unlike when a defendant seeks to substitute one appointed counsel for another, he is not required to demonstrate 'inadequate representation by his retained attorney, or to identify an irreconcilable conflict between them.'" (*People v. Maciel* (2013) 57 Cal.4th 482, 512.)

A defendant who seeks to replace *appointed* counsel must show good cause for the change because their right to appointed counsel does not include the right to demand appointment of more than one counsel. (*People v. Ortiz*, *supra*, 51 Cal.3d at p. 980.) "Substitution of appointed counsel threatens to waste public resources by creating 'duplicative representation and repetitive investigation at taxpayer expense.' [Citation.] Free substitution as a matter of right would present an 'undesirable opportunity to "delay trials and otherwise embarrass effective prosecution" of crime.' [Citations.] Denial of substitution presumably will not deprive the defendant of effective counsel, because he or she 'will continue to be represented by an attorney at public expense.'" (*People v. Lara* (2001) 86 Cal.App.4th 139, 151 (*Lara*).)

"Few restrictions apply when a defendant wants to discharge his or her retained counsel." (*People v. Lopez* (2018) 22 Cal.App.5th 40, 46.) "In contrast to situations involving appointed counsel, a defendant may discharge his retained counsel of choice at any time with or without cause. [Citation.] 'The right of a nonindigent criminal defendant to discharge his retained attorney, with or without cause, has long been recognized in this

10

state [citations], and is governed by Code of Civil Procedure section 284, subdivision 2 [citations]. The right to discharge retained counsel is based on' necessity in view both of the delicate and confidential nature of the relation between [attorney and client], and of the evil engendered by friction or distrust." (*Lara*, *supra*, 86 Cal.App.4th at p. 152.)

The right to discharge a retained attorney is not absolute. "'The trial court has discretion to "deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice.'"'" (*People v. Maciel*, *supra*, 57 Cal.4th at p. 512.) "A court faced with a request to substitute retained counsel must balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution." (*Lara*, *supra*, 86 Cal.App.4th at p. 153.) "While we do require an *indigent* criminal defendant who is seeking to substitute one *appointed* attorney for another to demonstrate either that the first appointed attorney is providing inadequate representation [citations], or that he and the attorney are embroiled in irreconcilable conflict [citation], we have never required a *nonindigent* criminal defendant to make such a showing in order to discharge his *retained* counsel." (*People v. Ortiz*, *supra*, 51 Cal.3d at p. 984.)

Where an error of this sort occurs, we don't evaluate it for harmlessness, "Reversal is automatic . . . when a defendant has been deprived of his right to defend with counsel of his choice. [Citation.] The right to counsel of choice, including the right to discharge retained counsel, furthers the dual goals of due process: (1) ensuring the reliability of the guilt-determining process by reducing to a minimum the possibility that

11

an innocent person will be punished; and (2) protecting the ideal of human individuality

by affirming the state's duty to refrain from unreasonable interference with a defendant's

desire to defend himself in whatever manner he deems best. [Citations.] The right to

counsel of choice is one of the constitutional rights most basic to a fair trial. Accordingly,

it is clear that a criminal defendant need not demonstrate prejudice resulting from

violation of that right in order to have his conviction reversed." (*People v. Ortiz* (1990)

51 Cal. 3d 975, 988.)

    B. *Application*

The facts of this case are nearly indistinguishable from the facts of *Lara*, cited by

Gonzalez. There, as here, on the day trial was set to begin, defendant expressed

dissatisfaction with his privately retained counsel over his preparation and legal tactics.

The trial court explicitly treated the complaint as a *Marsden* motion, which it denied

because Lara had not shown an irreconcilable conflict. (*Lara*, *supra*, 86 Cal.App.4th at

p. 155.) The appellate court noted the correct standard when a defendant seeks to

discharge retained counsel is to allow the move at any time, with or without cause, as

long as they haven't been unjustifiably dilatory and substitution won't interfere with

expeditious judicial administration. (*Id*. at p. 153.)

As in this case, the People in *Lara* argued for affirmance on the ground that the

defendant's request was untimely. They argued that even though "the court never

addressed the *Ortiz* factors, . . . appellant's request occurred on the scheduled first day of

trial, and the court would not have abused its discretion if it had denied an *Ortiz* motion

12

as untimely." (*Lara*, *supra*, 86 Cal.App.4th at p. 159.) The Court of Appeal declined to affirm on the basis that Lara's day-of-trial request to discharge retained counsel was untimely, because there was no evidence (1) Lara's request was made in an effort to delay the proceedings or (2) that a delay would interfere with the prosecution of the case after a delay for substitution of counsel. (*Id.* at pp. 162-163.) The lack of evidence traced to the trial court's misapprehension of the correct legal standard. "The trial court considered the supposed *Marsden* motion on its merits and did not make any findings as to the motion's being untimely. We thus lack any factual findings that [Lara's] motion was necessarily untimely or that it would have disrupted the orderly process of justice." (*Id.* at p. 163.)

The appellate court concluded "there is no way to determine whether allowing appellant to discharge his retained counsel and granting a continuance would have been prejudicial to the prosecution and disrupted the orderly process of justice. It can certainly be speculated that it would have been disruptive to cancel the travel plans for [prosecution witnesses] and reschedule their trip, but it is equally possible that such a cancellation could have been accomplished with a minimum of disruption since these witnesses had not yet been made available to the defense. We are thus left with an incomplete record upon which to conclude that such a motion was necessarily untimely." (*Lara*, *supra*, 86 Cal.App.4th at pp. 163-164.) The appellate court concluded, that "[g]iven the court's misunderstanding of the nature of appellant's motion, we cannot say

13

the court properly exercised its discretion in its treatment of appellant's attempt to discharge his retained counsel" and for that reason reversed the conviction. (*Id.* at p. 166.)

The same logic applies to Gonzalez's case. Arguably, his request to replace his counsel came too late. However, we have no record upon which to reach that conclusion. As in *Lara*, Gonzalez said his dissatisfaction with his attorney was recent. When Judge Monterosso, who was set to hold the trial, asked whether he had already retained counsel, Gonzalez said he didn't yet have a new attorney because "this is something . . . recent, and so I was hoping that maybe I could get some time to find new counsel." He explained, "[a]fter we announced ready, there was a change in circumstances of Mr. Armendariz and I aren't able to see—agree on a—we had discussed a plan for my defense." The judge interrupted Gonzalez so he wouldn't reveal a privileged conversation with his attorney and sent the issue to Judge Dickerson, who didn't consider the issue of timeliness, so we have no further information upon which to conclude the request was untimely. (*Lara*, *supra*, 86 Cal.App.4th at p. 164.)

There's similarly inadequate information about any difficulty a delay would have presented to the prosecution. From the record, it appears that the witnesses against Gonzalez would have been law enforcement officers. The charges concerned drug use, gun possession, and resisting arrest. At the *Marsden* hearing, the prosecutor indicated they had a blood sample to support the drug use charges. And it appears that the remaining charges would be supported by the testimony of officers who were present at the time of arrest. Thus, the evidence that a delay would have disrupted the prosecution's

ability to litigate its case is even more lacking than in *Lara*, where the prosecution had arranged for witnesses to travel from out of state to testify. (*Lara*, *supra*, 86 Cal.App.4th at p. 164.)

The People argue "the trial court reasonably exercised its discretion when it denied [Gonzalez's] motion" based on the fact that Judge Monterosso mentioned the two to three month delay substituting new counsel likely would cause. However, Judge Monterosso did not decide Gonzalez's motion. Instead, he referred the issue to Judge Dickerson, who considered only the *Marsden* factors in deciding Gonzalez hadn't established good cause for discharging and replacing his current attorney.

It is entirely possible that Gonzalez decided to replace his counsel not out of lack of confidence in his representation, but in an effort to put off the day he would have to reckon with his own culpability. However, because the judge who conducted the *Marsden* hearing misunderstood the applicable legal standard, he did not develop a record on the issues of timeliness and disruption that would have been required to properly exercise his discretion in denying the motion. Application of the wrong legal standard is an abuse of discretion. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.) Though we may believe it would be a mistake for Gonzalez to withdraw his guilty plea and go to trial on all the charges he faces, our constitutional system places that decision with him, not with us.

# III

## DISPOSITION

We reverse the judgment and remand to the trial court, where the trial court shall allow Gonzalez to withdraw his guilty plea.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
J.

We concur:

MILLER _____
Acting P. J.

FIELDS _____
J.

16